UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
INFORMED CONSENT ACTION                 )
NETWORK,                                          )
                                                    )
                    Plaintiff,                      )
                                                    )
            v.                                        )            Civil Action No. 24-0798 (PLF)
                                                    )
CENTERS FOR DISEASE CONTROL        )
AND PREVENTION, et al.,                     )
                                                    )
                    Defendants.                   )
_____)


OPINION AND ORDER

        The Informed Consent Action Network ("plaintiff") has requested attorneys' fees

from the Centers for Disease Control and Prevention ("CDC") and the United States Department

of Health and Human Services ("HHS") (collectively, "defendants") under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(i).  See Pl. Mot.[1]  Upon careful consideration

of the parties' written submissions and the relevant authorities, the Court finds that plaintiff is

not entitled to a fee award under FOIA.  The Court therefore will deny plaintiff's motion.


        I.    FACTUAL AND PROCEDURAL BACKGROUND

        On February 2, 2022, plaintiff sent a FOIA request to the CDC.  See Pl. Mot. at 1.

The request quoted a CDC webpage that stated:  "FACT: COVID-19 vaccines do not change or

_____

        [1]        The Court has reviewed the following papers in connection with this matter:
Complaint ("Compl.") [Dkt. No. 1]; Plaintiff's Motion for Attorneys' Fees and Costs
("Pl. Mot.") [Dkt. No. 17]; Defendants' Opposition to Plaintiff's Motion ("Defs. Opp.")
[Dkt. No. 18]; Plaintiff's Reply in Support of Its Motion ("Pl. Repl.") [Dkt. No. 19].

interact with your DNA in any way."  Pl. Mot. at 1.  The request sought "[a]ll documents sufficient to support that COVID-19 vaccines do not change or interact with a vaccine recipient's DNA in any way."  Id.; see also id. at Ex. A [Dkt. No. 17-3].  The CDC assigned plaintiff's FOIA request the tracking number 22-00860-FOIA ("Request 860").  See Defs. Opp. at 1.

   The CDC's FOIA office initiated a search for records responsive to Request 860.  See Defs. Opp. at 1.  On March 10, 2022, the FOIA office issued a final determination letter to plaintiff, stating:  "A search of our records failed to reveal any documents pertaining to your request."  See Pl. Mot. at Ex. B [Dkt. No. 17-4].  The determination letter further stated that information responsive to plaintiff's inquiry was "available online" at a now-archived CDC webpage titled "Myths and Facts about COVID-19 Vaccines | CDC."  Id.; see also Myths and Facts About COVID-19 Vaccines, Centers for Disease Control and Prevention Archives, https://archive.cdc.gov/#/details?url=https://www.cdc.gov/coronavirus/2019-ncov/vaccines/ facts.html [https://perma.cc/MWP2-NMCQ].  The webpage included information stating that "COVID-19 vaccines do not change or interact with your DNA in any way."  Defs. Opp. at 2.

   On June 7, 2022, plaintiff submitted an administrative appeal of the CDC's "no records" determination to the Office of the Assistant Secretary for Public Affairs ("ASPA") within the Office of the Secretary (the "OS FOIA" office), which is the HHS FOIA division responsible for reviewing appeals of adverse CDC determinations.  See Pl. Mot. at Ex. C [Dkt. No. 17-5]; see also Declaration of Roger Andoh ("Andoh Decl.") [Dkt. No. 18-1] ¶ 10.  On September 22, 2023, the OS FOIA office remanded Request 860 back to the CDC's FOIA office for further consideration.  See Andoh Decl. ¶ 11.  On December 5, 2023, the CDC issued another "no records" determination letter stating:  "Subject matter experts have informed us that it is not biologically possible for the vaccines to change or interact with an individual's DNA, but [we]

nevertheless conducted a search for records.  Neither the National Center for Emerging and

Infectious Diseases, nor the National Center for Immunization and Respiratory Diseases located

records."  Pl. Mot. at Ex. D [Dkt. No. 17-6]; see also id. at 2.

       On December 7, 2023, plaintiff sent the CDC a second FOIA request.  See

Pl. Mot. at 2.  That second request is the subject of plaintiff's Motion for Attorneys' Fees and

Costs.  See id.  The request sought "[r]ecords containing the names of the subject matter experts

(SMEs) who informed CDC's December 5, 2023 response to FOIA Request #22-00860."

Compl. at Ex. 1 [Dkt. No. 1-1].  In other words, plaintiff's second request sought the names of

the SMEs who "informed" the CDC's response to plaintiff's first request, Request 860.  On

December 8, 2023, the CDC acknowledged receipt of plaintiff's request, and assigned the

request the tracking number 24-00312-FOIA ("Request 312").  See Defs. Opp. at 2.

       Since Request 312 sought records containing the names of the SMEs who

informed the CDC's response to Request 860, "the first step the [CDC's] FOIA analyst took was

to view FOIA Request 860."  Defs. Opp. at 2.  The analyst "located five pages of documents,

consisting of response forms submitted to the CDC FOIA office from program offices that

conducted searches for records potentially responsive to Request 860."  Id. at 2-3 (citing Andoh

Decl. ¶ 16).  The FOIA analyst determined that the five pages of documents were responsive to

Request 312 "because they provided the names of the three individuals that informed" the CDC's

response to Request 860.  Andoh Decl. ¶ 17.  On December 8, 2023, the CDC issued a

determination letter respecting Request 312, and produced the five pages of documents

responsive to Request 312, but redacted the names of CDC personnel pursuant to

FOIA Exemptions 5 and 6.  See Andoh Decl. ¶ 18; see also Compl. at Ex. 3 [Dkt. No. 1-3].

On December 29, 2023, plaintiff submitted an administrative appeal of the CDC's determination to the Office of the APSA within HHS's OS FOIA office.  See Pl. Mot. at 3; see also Compl. at Ex. 4 ("Admin. Appeal") [Dkt. No. 1-4].  Plaintiff alleged that the CDC improperly withheld records—that is, records containing the names of CDC personnel—pursuant to FOIA Exemptions 5 and 6.  See generally Admin. Appeal; see also Andoh Decl. ¶ 22.  The CDC received notice of plaintiff's appeal on January 4, 2024, and acknowledged receipt of the appeal that same day.  See Andoh Decl. ¶¶ 21, 23; see also Compl. at Ex. 5 [Dkt. No. 1-5].

On March 19, 2024, "having heard no response within the statutory timeframe," plaintiff filed the instant action against the CDC and the HHS under FOIA, 5 U.S.C. § 552. See generally Compl.; see also Pl. Mot. at 3.  On April 16, 2024, the CDC re-released the five pages of documents that it had previously produced, but this time with no redactions.  See Pl. Mot. at Ex. E [Dkt. No. 17-7]; Andoh Decl. ¶ 31.  The unredacted documents contained the names of three individuals who assisted in conducting the search for documents responsive to Request 860:  Brianna Lewis, Perstephanie Thompson, and Lisa Tindal.  See Pl. Mot. at 4.

On June 24, 2024, plaintiff's counsel wrote defendants' counsel, explaining that:

> While these three individuals may be employees of CDC who helped conduct the search, the question still remains as to whether "subject matter experts" helped inform CDC's December 5, 2023, response to FOIA Request [860].  The three employees do not appear to be subject matter experts by definition.

Pl. Mot. at 4.  Later that same day, defendants' counsel responded to plaintiff's counsel, stating:

> The documents we produced about the search from FOIA Request [860] contain a link to the CDC website with information from subject matter experts about how "it is not biologically possible for the vaccines to change or interact with an individual's DNA."  Are you saying this is not enough?

Id.  Later that same day, on June 24, 2024, plaintiff's counsel responded that:

> The original response from FOIA Request [860] stated, "Subject matter experts have informed us that it is not biologically possible for the vaccines to change or interact with an individual's DNA, but nevertheless conducted a search for records."
>
> The instant request sought the names of those subject matter experts who "informed" Roger Andoh and who conducted the search.  The link you provided does not identify the subject matter experts who informed Roger Andoh that it is not biologically possible for the vaccines to change or interact with an individual's DNA.  The link merely states this is a "Fact."  It does not tell us who stated that fact.
>
> You even stated in your email below that "The documents we produced about the search from FOIA Request [860] contain a link to the CDC website with information from subject matter experts about how 'it is not biologically possible for the vaccines to change or interact with an individual's DNA.'"  It is the name of these subject matter experts that we are trying to obtain.

Pl. Mot. at 4.

Two days later, on June 26, 2024, the CDC produced a supplemental release of four additional pages of documents.  See Pl. Mot. at 5; see also id. at Ex. F [Dkt. No. 17-8]. Defendants say that the reason why the CDC originally did not locate the four additional pages was because plaintiff's first FOIA request—Request 860—was assigned a different tracking number—24-00025-FOIA—after the FOIA request was remanded back from appeal.  See Defs. Opp. at 3 (citing Andoh Decl. ¶¶ 33-36).  The four additional pages contained the names of two individuals:  the first individual, Dr. John Su, stated that the documents plaintiff requested "involve demonstration of molecular and/or atomic forces that are beyond the scope of ISO to document," and that "[r]eferral to the National Institutes of Health (NIH) would be a viable option."  Pl. Mot. at 5; see also id. at Ex. F at 2.  The second individual, Natalie Thornburg, stated that plaintiff's "request is not biologically possible."  Pl. Mot. at 5.  After the supplemental production, defendants' counsel wrote plaintiff's counsel, stating in pertinent part:

> After speaking with the Agency, I can confirm that the "subject
> matter experts" pertaining to your FOIA request are the people on
> the forms given to you.  You may notice that one of the forms says,
> "This request is not biologically possible."
>
> While another document also references a link to a website
> explaining that COVID-19 vaccines do not alter DNA, ultimately, I
> do not know who authored that website.

Pl. Mot. at 5.  In total, defendants produced nine pages of records.  See Defs. Opp. at 3.

## II.     LEGAL STANDARD

Under Section 552(a)(4)(E)(i) of FOIA, courts may assess "reasonable attorney fees and other litigation costs reasonably incurred" by a FOIA plaintiff who "has substantially prevailed" in its suit.  To recover attorneys' fees and costs, a FOIA plaintiff must show both eligibility for and entitlement to a fee award.  See Nat'l Sec. Couns. v. Cent. Intel. Agency, 811 F.3d 22, 28 (D.C. Cir. 2016) (citing McKinley v. Fed. Hous. Fin. Agency ("McKinley"), 739 F.3d 707, 710 (D.C. Cir. 2014)).  "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees."  Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011) (quoting Jud. Watch, Inc. v. U.S. Dep't of Com., 470 F.3d 363, 368 (D.C. Cir. 2006)).  "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should receive fees."  Id.

In deciding whether a plaintiff is entitled to a fee award, courts weigh four factors: "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding' of the requested documents."  McKinley, 739 F.3d at 711 (quoting Tax Analysts v. U.S. Dep't of Just. ("Tax Analysts"), 965 F.2d 1092, 1093 (D.C. Cir. 1992)); see also Kwoka v. IRS, 989 F.3d 1058, 1063 (D.C. Cir. 2021).  "[T]he first three factors assist a court in

6

distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." Davy v. CIA, 550 F.3d 1155, 1160 (D.C. Cir. 2008). The fourth factor considers whether the agency's position "had a reasonable basis in law," Tax Analysts, 965 F.2d at 1096, and whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." McKinley, 739 F.3d at 712.

If the "four factors point in different directions," courts have "very broad discretion in deciding how to balance [the] factors and whether to award" fees. Morley v. CIA, 894 F.3d 389, 391 (D.C. Cir. 2018). "No one factor is dispositive," but "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." Kwoka v. IRS, 989 F.3d at 1064 (quoting Davy v. CIA, 550 F.3d at 1159).

If plaintiff establishes both eligibility for and entitlement to a fee award, plaintiff must also demonstrate that the award sought is "reasonable." See 5 U.S.C. § 522(a)(4)(E)(i); see also Elec. Priv. Info. Ctr. v. DHS, 197 F. Supp. 3d 290, 293 (D.D.C. 2016).

## III. DISCUSSION

Defendants do not contest that plaintiff is "eligible" to receive attorneys' fees. See Defs. Opp. at 5 ("Defendants acknowledge that Plaintiff has established eligibility and thus 'may' obtain attorneys' fees under FOIA."). The question, then, is whether plaintiff is "entitled" to fees. Recall that courts must consider four factors when determining if a FOIA plaintiff is entitled to a fee award: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents. See McKinley, 739 F.3d at 711.

Though the first three factors weigh slightly in plaintiff's favor, the Court finds that the fourth factor weighs heavily against plaintiff. The Court concludes that plaintiff is not entitled to a fee award under FOIA, and the Court therefore will deny plaintiff's motion.

### A.   *Public Benefit Derived From the Case*

The D.C. Circuit has explained that "if it's plausible ex ante that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." Morley v. CIA, 810 F.3d 841, 844 (D.C. Cir. 2016). The "public benefit" factor turns on an ex ante assessment of: (1) "the effect of the litigation for which fees are requested," and (2) "the potential public value of the information sought." Davy v. CIA, 550 F.3d at 1159. The "effect of the litigation" inquiry "ask[s] simply whether the litigation has caused the release of requested documents." Morley v. CIA, 810 F.3d at 844. This inquiry supports plaintiff because plaintiff's litigation resulted in the release of several pages of records responsive to its request. See Pl. Mot. at 7 (stating that defendants' post-litigation release "provided responsive records.").

As for the "potential public value" of the information plaintiff sought, the Court must assess whether plaintiff's FOIA request had "at least a modest probability of generating useful new information about a matter of public concern." Morley v. CIA, 810 F.3d at 844. Plaintiff's first request—FOIA Request #22-00860-FOIA, or "Request 860"—quoted a CDC webpage that stated: "FACT: COVID-19 vaccines do not change or interact with your DNA in any way," see Pl. Mot. at 1, and sought "[a]ll documents sufficient to support that COVID-19 vaccines do not change or interact with a vaccine recipient's DNA in any way." Id. at Ex. A. On December 5, 2023, the CDC replied that "[s]ubject matter experts have informed us that it is not biologically possible for the vaccines to change or interact with an individual's DNA." Pl. Mot. at 2; see also id. at Ex. D. The CDC "nevertheless conducted a search for records," and

reported that "[n]either the National Center for Emerging and Infectious Diseases, nor the

National Center for Immunization and Respiratory Diseases located records."  Pl. Mot. at Ex. D.

Then, on December 7, 2023, plaintiff sent the CDC a second request:  FOIA

Request #24-00312-FOIA, or "Request 312."  See Pl. Mot. at 2.  Recall that Request 312, not

Request 860, is the subject of plaintiff's Motion for Attorneys' Fees and Costs.  See id.

Request 312 sought "[r]ecords containing the names of the subject matter experts (SMEs) who

informed CDC's December 5, 2023 response to FOIA Request [860]."  Compl. at Ex. 1.

Plaintiff alleges that in submitting Requests 860 and 312, it "was trying to learn, so that it could

share with the public, who or what justified CDC's claim" that COVID-19 vaccines do not

change or interact with a vaccine recipient's DNA, a claim that, according to plaintiff, was

"meant to reassure vaccine recipients about a novel vaccine platform."  Pl. Mot. at 16.  Plaintiff

contends that the "public benefit derived from the case" therefore "is astounding."  Id. at 17.

Defendants counter that "there was no public benefit whatsoever to Plaintiff

submitting its FOIA request."  Defs. Opp. at 5.  First, defendants note that plaintiff, in submitting

Request 312, "did not request data or studies supporting the assertion that vaccines do not change

a person's DNA."  Id. at 5-6.  Plaintiff sought that information when it submitted Request 860,

its initial FOIA request.  See id. at 6 (citing Pl. Mot. at Ex. A).  Request 312, the subject of this

litigation, sought "the identity of the people who assisted in responding" to Request 860, and

defendants argue that "[p]laintiff has not demonstrated . . . any public benefit that may be

derived from knowing the names of people who helped respond to a prior FOIA request."  Id.

Second, defendants argue that "information about the COVID-19 vaccines, DNA,

and RNA is so widely available that it is hard to imagine what 'useful new information about a

matter of public concern' Plaintiff was hoping to uncover when it submitted the request at issue

in this case [Request 312], and, for the sake of argument, the prior one [Request 860]." Defs. Opp. at 9 (quoting Morley v. CIA, 810 F.3d at 844). According to defendants, "[a]nyone interested in learning more about the vaccines, DNA, and RNA can consult any of many sources to learn more," such as MedlinePlus, "a service of the National Library of Medicine, the world's largest medical library." Defs. Opp. at 9. Given the "[c]ountless other sources [that] publish information about COVID vaccines," defendants argue that plaintiff "could not have expected to learn anything that was not already out there to contribute to the supposed discourse." Id. at 10.

    The Court finds that the "public benefit" factor weighs only slightly in favor of plaintiff. Plaintiff claims that the names of the SMEs who informed the CDC's December 5, 2023 response to Request 860 are "extremely noteworthy" and are "of great interest to the public." Pl. Repl. at 4. While plaintiff's request for the names of these SMEs had "at least a modest probability of generating useful new information about a matter of public concern," Morley v. CIA, 810 F.3d at 844, information about the COVID-19 vaccines, DNA, and RNA was widely available at the time plaintiff submitted Request 312. See Defs. Opp. at 9 (citing a webpage "specifically about COVID vaccines, where the public can access statistics, research, clinic trials, and journal articles related to the COVID vaccines."). The names of the specific SMEs that informed the CDC's response to Request 860 therefore would have had a negligible impact on the general public's knowledge about the safety of COVID-19 vaccines. See Tax Analysts v. DOJ, 965 F.2d at 1093 (explaining that "a bare allegation that a request bears a nexus to a matter of public concern does not automatically mean that a public benefit is present.").

    In sum, while the Court cannot say that plaintiff's FOIA Request 312 had "absolutely no public benefit," Gov't Accountability Project v. DHS, Civil Action No. 17-2518 (CRC), 2020 WL 4931932, at *1 (D.D.C. June 2, 2020), the information plaintiff requested

would only barely have added to the public's knowledge of the safety of COVID-19 vaccines, if at all. The first factor therefore weighs only slightly in favor of a fee award.

### B.  *Commercial Benefit and Nature of Interest*

The second factor—the "commercial benefit" factor—considers whether plaintiff derived a commercial benefit from obtaining the records, while the third factor—the "nature of interest" factor—looks at the nature of plaintiff's interest in the requested records. These factors "are closely related and often considered together." Nat'l Sec. Archive v. DOD, 530 F. Supp. 2d 198, 201 (D.D.C. 2008). When considering the second factor, courts "usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group . . . but would not if it was a large corporate interest." Fenster v. Brown, 617 F.2d 740, 742 n.4 (D.C. Cir. 1979) (quoting S. REP. NO. 93-854, at 19). When considering the third factor, courts "generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented." Id. (quoting S. REP. NO. 93-854, at 19). The D.C. Circuit has "embraced the view that a distinction is to be drawn between the plaintiff who seeks to advance his private commercial interests and thus needs no incentive to file suit, and a newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefitting the general public." Davy v. CIA, 550 F.3d at 1158.

Plaintiff contends that it is a "not-for-profit news media organization" that "does not benefit commercially from obtaining the records" at issue in this case. Pl. Mot. at 18; see also Elec. Privacy Info. Ctr. v. DHS, 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (explaining that "[f]ee recovery is often appropriate . . . when the plaintiff is a nonprofit public interest group."). Plaintiff's "mission is to raise public awareness about vaccine safety and to provide the public with information to give informed consent." Pl. Mot. at 15. "As part of its mission," plaintiff

11

"investigates and disseminates information regarding vaccine safety issues for free, including through its website, a weekly health news talk show, and through press events and releases." Id. at 15. Plaintiff "relies upon donations from the public to support its legal work, including FOIA requests." Id. at 18. Plaintiff asserts that it therefore "cannot genuinely be disputed" that its "request did not seek disclosure of the records at issue for any commercial benefit." Id.

Defendants counter that the second and third factors "barely favor Plaintiff, if at all." Defs. Opp. at 11. Defendants assert that "[w]hile it may be true" that plaintiff is a not-for-profit news media organization, "the record shows that Plaintiff does not need a 'public subsidy' or an 'incentive to pursue litigation' as is the case for other journalists and public interest groups." Id. (quoting Davy v. CIA, 550 F.3d at 1160). Defendants contend that the over one hundred FOIA cases plaintiff has filed and the amount of money plaintiff has received in donations over the past few years indicate that "[p]laintiff has the resources" to bring these FOIA cases, and "does not need a subsidy from the taxpayer." Defs. Opp. at 13; see also id. at 11-13.

The Court finds that the second and third factors weigh in plaintiff's favor. FOIA's "allowance for fees 'remove[s] the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.'" Kwoka v. IRS, 989 F.3d at 1063 (quoting Nationwide Building Maintenance, Inc. v. Sampson, 559 F.2d 704, 715 (D.C. Cir. 1977)). The D.C. Circuit has cautioned that "'news interests, regardless of private incentive, generally should not be considered commercial interests,' and the second and third factors 'generally' should weigh in favor of scholars and journalists unless their interest 'was of a frivolous or purely commercial nature.'" Id. at 1064 (quoting Davy v. CIA, 550 F.3d at 1160-61). Defendants do not dispute

that plaintiff is a not-for-profit news media organization, see Defs. Opp. at 11, and defendants do not assert that plaintiff's FOIA Request 312 "was of a frivolous . . . nature." Kwoka v. IRS, 989 F.3d at 1064. Rather, defendants argue that plaintiff's interest is commercial in nature, as evidenced by the number of FOIA cases that plaintiff has initiated. See Defs. Opp. at 11-13.

Defendants' argument is unavailing. As plaintiff convincingly argues, "the number of FOIA suits filed by Plaintiff only serves to substantiate[] its mission, which is to raise public awareness about vaccine safety and to provide the public with information to give informed consent." Pl. Repl. at 7. Further, "[t]he number of FOIA cases filed and the amount of donations to Plaintiff does nothing to address whether Plaintiff derived a commercial benefit from the FOIA request at issue or the nature of Plaintiff's interest in the records sought." Id.; see also Kwoka v. IRS, 989 F.3d at 1064 (explaining that "news interests, regardless of private incentive, generally should not be considered commercial interests.") (emphasis added).

In sum, defendants have not demonstrated that plaintiff derived a commercial benefit from obtaining the records, or that the nature of plaintiff's interest in the records was commercial in nature. The second and third factors therefore weigh in favor of a fee award. See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just., 820 F. Supp. 2d 39, 45 (D.D.C. 2011) (holding that the second and third factors of the fee award analysis favor plaintiff because plaintiff is "an entity that 'gathers information of potential interest to a segment of the public, uses [its] editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience,' and therefore is 'among those whom Congress intended to be favorably treaded under FOIA's fee provision.'") (quoting Davy v. CIA, 550 F.3d at 1161-62).

### C.   Reasonableness of Withholding Records

The fourth factor considers whether the agency had a reasonable basis in law for initially withholding the records, and was not "'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Davy v. CIA, 550 F.3d at 1162 (quoting LaSalle Extension Univ. v. FTC, 627 F.2d 481, 486 (D.C. Cir. 2008)). "'If the Government's position is correct as a matter of law, that will be dispositive, [but] [i]f the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus.'" Id. (quoting Chesapeake Bay Found. v. U.S. Dep't of Agric., 11 F.3d 211, 216 (D.C. Cir. 1993)). "Under the fourth factor, the question for a district court is not whether the agency's legal and factual positions were correct." Morley v. CIA, 894 F.3d at 393. Rather, [t]he question is whether the agency's positions were reasonable," and whether "the agency reasonably (even if incorrectly) withheld documents." Id. The burden is on the government to show reasonableness. See Davy v. CIA, 550 F.3d at 1162-63.

Plaintiff argues that "[d]efendants should not have withheld the names of its employees prelitigation because: (1) the threshold requirement of showing that Exemption 6 is triggered was not met . . . (2) the general rule that government employees do not have a significant privacy interest in their names alone was not overcome . . . and (3) the intense public interest in subject matter expert employees behind vaccine safety claims outweighs any purported privacy interest in Defendants' employees' names." Pl. Mot. at 20-21.

Defendants counter that they were reasonable to have originally applied Exemption 6 to withhold "the names of the individuals in the record," even if they later chose to reveal the names after plaintiff filed suit. Defs. Opp. at 14. Defendants offer the declaration of Mr. Roger Andoh, the FOIA Officer for the CDC and the Agency for Toxic Substances and

Disease Registry ("ATSDR"), two agencies housed within the HHS.  <u>See</u> Andoh Decl. ¶ 1.

Mr. Andoh states that around the time plaintiff submitted FOIA Request 312, the CDC "ha[d]

documented an increase in cyber bullying, flooded Outlook email boxes, harassing voicemails

and phone calls, and threats to employees."  <u>Id</u>. ¶ 20.  The CDC FOIA analyst responding to

plaintiff's FOIA Request 312 therefore determined that there was a "unique risk of harm" to the

individuals whose names were included in the records plaintiff requested, largely because those

individuals "work in vaccine safety, a topic that currently and for the foreseeable future attracts

high levels of aggression on social media and some network media channels."  <u>Id</u>.  The CDC

FOIA analyst concluded that it therefore was appropriate to withhold the individuals' names.

   To further support their assertion that it was reasonable to withhold the names of

the SMEs contained in the responsive records, defendants offer articles, studies, and other

publications that demonstrate that "health care workers all over the country [experienced] an

increase in threats and harassment" at "the beginning of the pandemic."  Defs. Opp. at 15.

Defendants also note that their "decision to later release the records to avoid an argument is not a

concession that they did not have a valid withholding basis to begin with."  Defs. Opp. at 16.

   The Court finds that defendants "had a 'colorable or reasonable basis for not

disclosing the material.'"  <u>Kwoka v. IRS</u>, 989 F.3d at 1065 (quoting <u>Davy v. CIA</u>, 550 F.3d

at 1163); <u>see also</u> <u>LaSalle Extension Univ. v. FTC</u>, 627 F.2d at 486 (noting that to "rebut a claim

of Government unreasonableness or obduracy, the Government need not prove that the

information was in fact exempt, only that the Government had a reasonable basis in law for

concluding that the information in issue was exempt.") (internal quotation marks omitted).

   Recall that defendants responded to plaintiff's FOIA Request 312 as follows:

   We located 5 pages of responsive records (5 pages released in full
   or part). After a careful review of these pages, some information was

> withheld from release pursuant to 5 U.S.C. § 552 Exemptions 5
> and 6. The foreseeable harm standard was considered when
> applying these redactions. . . .
>
> EXEMPTION 6 - Exemption 6 protects information in personnel
> and medical files and similar files when disclosure would constitute
> a clearly unwarranted invasion of personal privacy. The information
> that has been withheld under Exemption 6 consists of personal
> information, such as names of CDC personnel. We have determined
> that the individuals to whom this information pertains have a
> substantial privacy interest in withholding it.

Compl. at Ex. 3. The CDC "applied Exemption 6 to the records at issue to redact the names" of

the CDC personnel "contained therein." Defs. Opp. at 13. And Exemption 6 of FOIA allows

agencies to withhold "personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In this

circuit, Exemption 6 "exempt[s] not just files, but also bits of personal information, such as

names and addresses, the release of which would 'create[ ] a palpable threat to privacy.'"

Judicial Watch, Inc. v. FDA ("Judicial Watch"), 449 F.3d 141, 152-53 (D.C. Cir. 2006)

(quoting Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 391 (D.C. Cir. 1987)).

    Defendants had reason to believe that a "palpable threat" to their employees'

privacy existed at the time plaintiff submitted FOIA Request 312. See Defs. Opp. at 15; see also

Judicial Watch, 449 F.3d at 153. Defendants cite a Johns Hopkins article that "identified 1,499

unique reports of harassment across local health departments in the U.S. during the first eleven

months of the pandemic from March 2020 to January 2021." Id. (citing Harassment of Public

Health Officials Widespread During the Initial Phase of the COVID-19 Pandemic, Johns

Hopkins Bloomberg School of Public Health (Mar. 17, 2022) [Dkt. No. 18-11]). Defendants

also cite a qualitative study showing the pervasive harassment local health department leaders

experienced during the COVID-19 pandemic and the negative effect that the harassment had on

the department leaders' professional and personal lives.  Id. (citing Jordan Royster et al., <u>Local</u>
<u>Public Health Under Threat: Harassment Faced by Local Health Department Leaders During the</u>
<u>COVID-19 Pandemic</u>, 7 PUBLIC HEALTH IN PRACTICE 100468 (2024)).

   In light of the evidence showing the harassment that public health officials were
receiving at the height of the pandemic and into 2024, <u>see</u> Defs. Opp. at 15, the Court concludes
that there was at least a reasonable basis in law for defendants to invoke Exemption 6 to protect
the privacy interests of the SMEs and CDC personnel contained in the records responsive to
Request 312.  <u>See</u> <u>Cornucopia Inst. v. Agric. Mktg. Serv.</u>, 285 F. Supp. 3d 217, 226
(D.D.C. 2018) (concluding that defendant's decision to initially withhold responsive documents
"contain[ing] information similar to personnel information" pursuant to FOIA Exemption 6
"certainly had 'a colorable basis in law'" for purposes of the "reasonableness" inquiry).

   But the Court's analysis does not end there:  to determine whether defendants
reasonably withheld the names of CDC personnel, the Court "must balance the private interest
involved (namely, 'the individual's right of privacy') against the public interest (namely, 'the
basic purpose of the Freedom of Information Act,' which is 'to open agency action to the light of
public scrutiny')."  <u>Judicial Watch</u>, 449 F.3d at 153 (quoting <u>Horowitz v. Peace Corps</u>, 428
F.3d 271, 278 (D.C. Cir. 2005)).  As previously discussed, the public interest in learning the
names of the SMEs and CDC personnel that informed the CDC's response to Request 860 is
minimal, at best.  <u>See</u> <u>supra</u> Section III.A.  And even if it is true that the COVID-19 vaccine "has
significant health risks," the names of the personnel involved in the CDC's response to
Request 860 prove little about "the nature or even the existence of [those] risks."  <u>Judicial</u>
<u>Watch</u>, 449 F.3d at 153.  "In the absence of a legitimate public interest, the private interest in
avoiding harassment or violence tilts the scales" of the fourth factor in favor of defendants.  <u>Id.</u>

Turning to the last consideration—whether defendants were recalcitrant in their opposition or obdurate in their behavior—the Court finds that defendants were neither. Defendants promptly acknowledged and responded to plaintiff's FOIA requests prior to plaintiff filing suit, and defendants ultimately released unredacted documents responsive to plaintiff's requests. See Andoh Decl. ¶¶ 5-36. Though defendants had not yet responded to plaintiff's December 29, 2023 appeal at the time plaintiff filed the instant suit, the CDC made reasonable efforts to correspond with plaintiff post-litigation. See Pl. Mot. at 7; see also Defs. Opp. at 3. As for Request 312, the request that is the subject of plaintiff's pending Motion for Attorneys' Fees, the CDC both acknowledged and responded to the request on December 8, 2023, the day after plaintiff submitted the request. See Andoh Decl. ¶ 18. And in response to plaintiff's administrative appeal of the CDC's December 8, 2023 determination letter, the CDC acknowledged receipt of the appeal on the day it received it: January 4, 2023. See Andoh Decl. ¶¶ 21, 23; see also Compl. at Ex. 5. On this record, the Court finds no evidence that defendants engaged in recalcitrant or otherwise obdurate behavior in responding to Request 312.

Because defendants had a reasonable basis for withholding the relevant records and did not engage in obdurate behavior, the fourth factor cuts decisively in defendants' favor.

### D. Balancing the Factors

Recall that when deciding entitlement to fees and costs, no one factor is dispositive. See Davy v. CIA, 550 F.3d at 1159. Weighing the four factors against one another, the Court finds that plaintiff is not entitled to a fee award under FOIA. The first, second, and third factors only slightly favor plaintiff, while the fourth factor heavily favors defendants because they had a colorable basis in law for initially withholding responsive records under Exemption 6, and were not recalcitrant in their opposition or obdurate in their behavior. On this

18

record, the Court finds that plaintiff has not fulfilled the "entitlement" prong of the fee award

analysis. See Morley v. CIA, 894 F.3d at 396 (finding that plaintiff was not entitled to fees

because "factor four heavily favor[ed] the agency and the other three factors only slightly

favor[ed]" plaintiff); see also Assassination Archives and Research Center, Inc. v. CIA, Civil

Action No. 17-160 (TNM), 2019 WL 1491982, at *7 (D.D.C. Apr. 4, 2019) (finding that plaintiff

was not entitled to fees because while the "first three factors may weigh in [plaintiff's]

favor, . . . the fourth factor weighs strongly in the [defendant's] favor.").

        Because plaintiff is not entitled to attorneys' fees, the Court need not reach the

issue of whether the award plaintiff seeks is reasonable. Accordingly, it is hereby

        ORDERED that plaintiff's Motion for Attorneys' Fees [Dkt. No. 17] is DENIED.

This is a final appealable order. See FED. R. APP. P. 4(a).

        SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 10/10/25